**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | |
|---|---|
| Plaintiff Betty Alexander, As Administrator Of the Estate of Cedric Alexander, <br><br> v. <br><br> Commissioner Jefferson Dunn, Individually and in his official capacity; <br> Commissioner Ruth Naglich, Individually and in her official capacity, Warden Christopher Gordy, Individually and in his official capacity; <br> Commissioner Charles Daniels Individually and in his official capacity <br> Lieutenant Terry Wilson, Individually and in his official capacity; <br> CO Tubbs, Individually and in his official capacity <br> CO Miller, Individually and in his official capacity <br> Wexford, as a person under §1983; <br> Fictitious Defendants A, B, C, and D, whether singular or plural, being those persons, firms, corporations, or other legal entities responsible for the allegations made or described in the complaint and made the basis of the lawsuit herein; <br> Fictitious Defendants E, F, and G, whether singular or plural, being those persons, firms, corporations, or other legal entities who condoned, authorized, or ratified the conduct as set out in the Complaint herein. <br> The identities of Fictitious Defendants are unknown at this time but will be added to the complaint by amendment when their identities are ascertained, | Case No. _____ <br><br> JURY DEMAND |

## COMPLAINT FOR DAMAGES AND VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983)

1. The plaintiff brings this civil rights action to vindicate the decedent's rights under the United States Constitution, the Alabama State Constitution, and under the statutory laws of the United States and Alabama.

2. This is an action for damages sustained by a citizen of the United States against Fictitious Defendants A, B, C, D, E, F, and G for the injuries sustained by the decedent on April 3, 2022, when Defendants caused the decedent to be unlawfully subjected to hazardous

1

material and detained and the Defendants' failure to render reasonable medical treatment to a known medical need and the Defendants' failure to implement proper policies and procedures in violation of the U.S. Constitution, which resulted in the wrongful death of Cedric Levy Alexander.

3. The Plaintiff sues for violation of civil rights pursuant to 28 U.S.C. §§ 1331, and 1343(a)(3), (4) to obtain redress for deprivation of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983. Plaintiff's claims for declaratory relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the *Federal Rules of Civil Procedure*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over all other claims (State Law Claims) alleged herein pursuant to 28 U.S.C. § 1367. The state law claims on behalf of the Estate are brought under the Alabama Wrongful Death Statute, Code of Alabama, § 6-5-411, et seq.

4. The Plaintiff, Betty Alexander, as Administratrix, is an adult resident of Jefferson County, Alabama, and has been appointed Administratrix of the Estate of Cedric Levy Alexander by the State of Alabama. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Bibb County, Alabama. Venue is proper in the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).  Plaintiff asserts that the Northwestern Division is the proper Division of the United States District Court for the Northern District of Alabama for the filing of this action.

## PARTIES

5. Plaintiff, Betty Alexander, (hereinafter referred to as "Alexander"), is a citizen of the United States and a citizen of the State of Alabama who was over the age of eighteen years and a resident of Jefferson County, Alabama.

6. Defendant CO Tubbs was at all times relevant ADOC's a correctional officer at Bibb County Correctional Facility responsible for safety and security at Bibb County C.F. He is sued in his individual capacity.

7. Defendant, CO Miller (hereinafter referred to as Miller), was at all times relevant ADOC's a correctional officer at Bibb County Correctional Facility responsible for safety and security at Bibb County C.F. At all times relevant, he was acting in that capacity under the color of state law. He is sued in his individual capacity.

8. Defendant Lt. Terry Wilson (hereinafter referred to as Lt. Wilson),  was at all times relevant ADOC's a correctional officer at Bibb County Correctional Facility responsible for safety and security at Bibb County C.F. At all times relevant, he was acting in that capacity under the color of state law. He is sued in his individual capacity.

9. Warden Christopher Gordy, (hereinafter referred to as "Gordy"), was at all times relevant to ADOC's Warden at Bibb County Correctional Facility responsible for health care in ADOC facilities. At all times relevant, he was acting in that capacity under the color of state law. He is sued in his individual capacity.

10. Defendant Jefferson Dunn (Dunn) was at all times relevant to the Commissioner of the Alabama Department of Corrections (ADOC). As such, he was ultimately responsible for ensuring that the health, safety, medical, and emotional needs of inmates in ADOC were protected. At all times relevant, he was acting in that capacity under the color of state law. He is sued in his individual capacity.

11. Defendant, Ruth Naglich (Naglich), was at all times relevant to ADOC's Commissioner responsible for health care in ADOC facilities. As such, her primary duties included ensuring that the health, safety, medical, and emotional needs of inmates in custody were protected. At all times relevant, she was acting in that capacity under the color of state law. She is sued in his capacity.

12. ADOC Deputy Commissioner of Operations, Charles Daniels, gives instructions to law enforcement agencies at Bibb County Correctional Facility. As such, his primary duties included ensuring that the health, and safety of inmates in custody were protected. At all times relevant, he was acting in that capacity under the color of state law. He is sued in his capacity.

13. Defendant, Wexford Health Sources, Inc. (Wexford), was at all times a for-profit Florida Corporation that, among other services, contracts within the ADOC to provide health care for inmates. At all relevant times, it was under contract to provide such services to inmates in the Alabama prison system. It was contractually and duty-bound to provide proper and appropriate health care, including substance abuse and overdose events.

14. Fictitious Defendants A, B, C, and D, whether singular or plural, being those persons, firms, corporations, or other legal entities responsible for the allegations made or described in the complaint and made the basis of the lawsuit herein, and who will be added to the complaint by amendment when their identities are ascertained.

15. Fictitious Defendants E, F, and G, whether singular or plural, being those persons, firms, corporations, or other legal entities who condoned, authorized, or ratified the conduct as set out in the complaint herein, and who will be added to the complaint by amendment when their identities are ascertained.

### **STATEMENT OF FACTS**

16. The Plaintiff incorporates by reference all of the allegations of preceding paragraphs of this Complaint as if the same were set out fully herein.

17. Cedric Alexander was born on February 9, 1995, to Betty L. Alexander and Cedric Humphrey.

18. In addition to being a loving son, he was a brother, nephew, cousin, father, and friend. His friends affectionately referred to him as Ced-Ced.

19. Moreover, Cedric Alexander was the father to Jace Butler, Caysen McDowell, Cedric Alexander, and Zion Thomas.

20. The Bibb County Correctional Facility serves as a medium security level prison facility within the ADOC system of prisons, and it houses inmates who are otherwise within the legal custody of the State of Alabama.

21. Warden Christopher Gordy, Warden John Hutton, Captain Ronald Carter, Captain Christopher Webster, Captain Fitzgerald Clemons, Lt. Robert Rutledge, Lt. Tynua

Edwards, Sgt. Sanchez Brown, Lt. Terry Wilson, Lt. Christopher McLauren, Sgt. Demyja Woods, Lt. Trevor Miree, Lt. Joseph Jones, Sgt. Jeffrey Westbrook, Sgt. Shannon Walker, Lt. Elvest Lucy, Lt. Daysia White, Lt. Malcolm Holtzclaw, Sgt. Decory Dickerson, Sgt. James Sealey, Lt. James Richards, Captain Jason Acker, Lt. Tommy Evans, Sgt. Joshua Chapman, Sgt. Rehawn Reynolds, Veronica Richardson, Deloris Wilson, Tyran Perkins, Kristi Kinard, and Angel Badea were at all times relevant employees of the ADOC and working as supervisors at Bibb County Correctional Facility.

22. These supervisors are charged with the role of maintaining order and security within the facility and contributing to the rehabilitation of the inmates.

23. Defendants Dunn, Naglich, and Daniels are all policymakers and supervisors within the Alabama Department of Corrections prison system.

24. Narcan/Naloxone is a life-saving medication that rapidly reverses an opioid overdose. It is an opioid antagonist.

25. Given the life-saving benefits, Naloxone can be purchased for a relatively low price and the associated training is affordable as well.[1]

26. Training for the use of Naloxone is a low-cost, efficient remedy to the prevalence of opioid use and related overdoses occurring in Alabama prison systems, in particular, Bibb County C.F.[2]

27. On December 9, 2020, the United States Department of Justice filed a lawsuit against the Alabama Department of Corrections. As the DOJ put it in a lawsuit against Alabama prisons, "the use of illicit substances, including methamphetamines or Fentanyl and synthetic cannabinoids, is prevalent in Alabama's Prisons for Men. Prisoners using illicit substances often harm others or become indebted to other prisoners.

28. The lawsuit is the result of a multi-year investigation into allegations of constitutional violations within Alabama's prisons for men conducted by the department's Civil Rights Division and the U.S. Attorney's Offices for the Northern, Middle, and Southern Districts of Alabama. As required by the Civil Rights of Institutionalized Persons Act (CRIPA), the department provided the state with written notice of the supporting facts for these alleged conditions, and the minimum remedial measures necessary to address them in Notice Reports issued on April 2, 2019, and July 23, 2020.

29. In 2019, the Department of Justice notified state officials that ADOC had demonstrated an "inability to control the flow of contraband into and within the prisons, including illegal drugs and weapons."

30. The Justice Department has found that the flow of illegal drugs within Alabama's prisons is not the fault of a few officers or confined to single prisons. Instead, it is connected to

---

[1] https://bjatta.bja.ojp.gov/naloxone/what-are-typical-costs-law-enforcement-overdose-response-program
[2] https://towardtheheart.com/naloxone-training
https://www.redcross.org/take-a-class/opioidoverdose

deep and widespread deficiencies described by one former U.S. Attorney as "serious, systemic, and in need of fundamental and comprehensive change."

31. Within the lawsuit, it is alleged that "the failure to prevent the introduction of illegal contraband leads to prisoner-on-prisoner violence."

32. Federal investigators found that the use of methamphetamines, Fentanyl, synthetic cannabinoids, and other substances is prevalent in Alabama's prisons. "Prisoners using illicit substances often harm others or become indebted to other prisoners," the lawsuit alleges. "The inability to pay drug debts leads to beatings, kidnappings, stabbings, sexual abuse, and homicides."

    a. In 2008, a former state prison guard at Bibb County Correctional Facility 26-year-old Kenya Morton was found to be promoting prison contraband.

    b. In 2015, Aulii Marie, a Bibb County corrections officer was found to have a controlled substance.

    c. In December 2022, Brandon Heptinstall, a former West Alabama corrections officer at Bibb County C.F. was arrested for illicit activities.

33. It is well-known among inmates at Bibb County C.F. that one or more correctional officers smuggle in drugs that they then extort the prisoners into buying.

34. Over many years, Defendants have repeatedly failed and refused to address widely known systemic deficiencies regarding the conditions within Bibb County C.F. prison.

35. Defendants have refused to discipline and hold accountable officers and other employees who neglect the care of prisoners in the Jail, care that the Defendants and ADOC are constitutionally and legally obligated to provide.

36. The Defendants were subjectively aware of the risk of harm of such a custom and policy, but, despite their knowledge, took no action to stop the custom and practice and thus knowingly allowed it to continue. The Defendants and the policy-making officials of the ADOC knew this custom and practice created a substantial risk of serious harm to and the deprivation of constitutional rights of prisoners in Bibb County C.F. They also knew the continuance of the custom and policy would result in the infliction of unnecessary pain and suffering. They were on notice of the custom and practice from complaints, communications from correctional officers, from their observations, from common sense, from other injuries and deaths, from other lawsuits, and by other ways.

37. On April 3, 2022, Cedric Alexander was pronounced dead due to a suspected drug overdose.

38. Cedric Alexander was in the custody of the ADOC and housed at the Bibb County Correctional Facility at the time that the illicit drugs were taken either voluntarily or involuntarily.

39. After Cedric Alexander ingested the opioids but before his death, Defendants had sufficient knowledge and sufficient time to intervene to undertake basic life-saving measures including the provision of Narcane/Naloxone.

40. Before Cedric Alexander consumed the opioids, the Defendants were aware of the risk and probability of the illicit drugs including opioids being brought into Bibb County CF by correctional officers but failed to undertake reasonable means to prevent it.

41. Defendants failed to provide Bibb County CF correctional officers with basic training that would empower them to prevent the death of Cedric Alexander and similar overdose events.

42. Cedric Alexander was unresponsive and unconscious for an extended period following the ingestion of the illicit drugs due to the slow and delayed response of the Defendants to his medical emergency.

**COUNT ONE**
**WRONGFUL DEATH**
**ALL DEFENDANTS**

43. Plaintiff incorporates by reference paragraphs 1 through 42 of the Complaint as if fully set out herein.

44. Defendants have negligently, maliciously, wantonly, recklessly, and intentionally injured the decedent.

45. Defendants acted recklessly and in complete disregard for the health, safety, and welfare of the decedent.

46. As a direct and proximate result of the Defendants negligence and wantonness, the decedent has suffered extensive damages which resulted in her death.

47. The negligence, wantonness, and recklessness were a direct and proximate cause of the decedent's injuries and was in direct violation of 42 U.S.C. § 1983.

WHEREFORE PREMISES CONSIDERED, Plaintiff seeks punitive damages as allowed by law, and such other further, and different relief as to which Plaintiff is entitled.

**COUNT TWO**
**FOURTEENTH AMENDMENT FAILURE TO PROTECT**
**ALL DEFENDANTS**
**42 U.S.C. § 1983**

48. Plaintiff adopts and incorporates paragraphs 1-47 of the complaint as fully set forth herein.

49. Under the Fourteenth Amendment, Cedric Alexander as an inmate was owed a duty of protection by Defendants because he was incarcerated and unable to fully protect himself or fully remove himself from any situation.

50. Defendants knowingly turned a blind eye to the smuggling of illegal, addictive, and potentially deadly drugs into the Bibb County C.F.

51. While incarcerated at the Madison County Jail, Cedric Alexander was subjected to and harassed by someone with fentanyl, which he took whether intentionally, knowingly, or neither.

52. Cedric Alexander's ingestion of fentanyl led directly to his death.

53. The fentanyl that Cedric Alexander ingested came into the prison through a guard or officer employed and managed there by the Defendants.

54. The officers' unlawful actions and Defendants' unlawful omissions created the conditions that resulted in Cedric Alexander's death and were the proximate cause of his death.

55. Defendants' actions and inactions were deliberately indifferent to their potential consequences.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendant to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

**COUNT THREE**
**INADEQUATE MEDICAL CARE**
**Defendants Dunn, Naglich, Daniels, Wexford, and Fictitious Defendants A through F**
**CIVIL RIGHTS—42 U.S.C. § 1983**

56. Plaintiff realleges and incorporates by reference paragraphs 1- 55 of this complaint.

57. Defendants were on notice that Cedric Alexander was in a condition requiring medical attention when he was told by the other prisoners, that Cedric Alexander was having trouble breathing and that he was unresponsive.

58. Defendants were deliberately indifferent to Cedric Alexander's medical needs and the increase in those needs as Cedric Alexander's health and condition declined while in his care, custody, and control, and in doing so did act with malice or reckless indifference to his federally protected rights intentionally violated his constitutional rights.

59. Defendant Wexford deliberately kept Bibb County C.F. understaffed so that they could make more money.

60. The Plaintiff claims damages against the Defendants for said constitutional violations.

61. As a direct and proximate result of Defendant's actions and purposeful inactions, Cedric Alexander was injured and damaged and ultimately lost his life, being deprived of his right to adequate medical care under the Fourteenth Amendment to the United States Constitution.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendant to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

**COUNT FOUR**

### FOURTEENTH AMENDMENT *MONELL* CLAIM

### Defendants Dunn, Naglich, Wexford, Daniels, and Fictitious Defendants A through G

### 42 U.S.C. § 1983

62. Plaintiff adopts and incorporates paragraphs 1-61 of the complaint as fully set forth herein.

63. Under the Fourteenth Amendment, Cedric Alexander as an inmate was owed a duty of protection by Defendants because he was incarcerated and unable to fully protect himself or fully remove himself from any situation.

64. Defendants failed to properly supervise Defendant correctional officers, the other guards on duty at the jail, and the medical staff at the prison regarding the proper level of care for detainees such as Cedric Alexander.

65. Defendants were aware of a need for extensive supervision regarding medical care.

66. Defendants specifically knew that it was required to provide a certain level of care both constitutionally and due to the DOJ lawsuit including the associated corrective reports herein and referenced above.

67. With deliberate indifference to the rights of citizens, Defendants failed to adequately supervise their officers and employees.

68. Defendants were aware that deprivation of the constitutional rights of citizens was likely to result from its lack of supervision.

69. As such, Defendants were deliberately indifferent and exhibited reckless disregard concerning the potential violation of constitutional rights.

70. The failure to supervise constituted official policies, practices, or customs of Bibb County C.F.

71. As a direct and proximate result of Defendants' acts and omissions, Cedric Alexander suffered significant physical injuries, pain and suffering, and death.

72. As a direct and proximate result of the acts and omissions described herein, Cedric Alexander suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

73. The conduct by the officers and supervisory officials identified in this Complaint and described herein constitutes inadequate medical care under the Fourteenth Amendment.

74. At all material times, the officers acted under the color of state law, as agents of the various municipalities and entities identified in the complaint.

75. At all material times, the officers wore their official department uniforms and were acting within the course and scope of their duties as officers and agents of the ADOC as identified in this complaint.

76. Defendants Dunn, Naglich, Lt. Wilson, Warden Gordy, and certain Fictitious Defendants A through F were at all relevant times policymakers for their respective departments.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive

8

damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

/s/Richard A. Rice (RIC086)
Richard A. Rice
The Rice Firm, LLC
rrice@rice-lawfirm.com
888-391-7193

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY SERVE DEFENDANT BY CERTIFIED MAIL:

Jefferson Dunn
Ruth Naglich
Charles Daniels
c/o Alabama Attorney General's Office
Clerk – Subpoenas/Summonses
501 Washington Avenue
Montgomery, AL 36104

CO Tubbs
CO Miller
LT. Terry Wilson
Warden Christopher Gordy
Warden John Hutton
Attn: Clerk
Bibb County Correctional Facility
565 Bibb Lane
Brent, AL 35034

Wexford Health Sources, Inc
501 Holiday Drive
Suite 300, Foster Plaza Four
Pittsburgh, PA 15220

JURY DEMAND

9